**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01225-NYW-MEH

1881 EXTRACTION COMPANY LLC,

     Plaintiff,

v.

KIINJA CORPORATION,
GREG JACKSON,
MICHAEL HARRIS, and
TISHCO LLC, d/b/a TIGERSHARK CONSULTING,

     Defendants.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on Defendants' Motion for Relief Under Federal Rule of Civil Procedure 12 (the "Motion" or "Motion to Dismiss") [Doc. 26, filed August 15, 2022]. The Court has reviewed the Motion, the related briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons set forth herein, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

The Court takes the following facts from the First Amended Complaint for Damages (the "Amended Complaint") [Doc. 8] and presumes they are true for the purposes of this Order. This case revolves around the sale of an extraction machine called the Kiinja Kinetic Acceleration 2X10L system (the "Kiinja Extractor"). *See, e.g.*, [Doc. 8 at ¶ 2]. Defendant Kiinja Corporation ("Kiinja") designed, engineered, and manufactured the Kiinja Extractor, with Defendant Tishco LLC, d/b/a TigerShark Consulting ("TigerShark") serving as Kiinja's engineering consultant. [*Id.*

at ¶¶ 26, 28]. Plaintiff 1881 Extraction Company LLC ("Plaintiff" or "1881 Extraction") is a "certified organic extraction company" that operates in the business of extracting oils from plant materials. [*Id.* at ¶ 20].

In 2019, Plaintiff was in the market for an extraction machine for its new facility. [*Id.*]. On or about June 11, 2019, members of Plaintiff met with representatives from Kiinja for a presentation about the Kiinja Extractor. [*Id.* at ¶ 26]. The meeting attendees included Defendants Greg Jackson, Kiinja's president, and Michael Harris, the sole member of TigerShark. [*Id.* at ¶¶ 11, 13, 26]. At the meeting, each Defendant made representations to Plaintiff to convince Plaintiff to purchase the Kiinja Extractor, including, *inter alia*, that (1) the Kiinja Extractor had superior safety in comparison to other extraction machines; (2) it had safety features that would shut the machine down if any malfunctions were detected; (3) it could extract almost any kind of oil; and (4) the Kiinja Extractor would be "a turn-key purchase." [*Id.* at ¶ 30].

Based on these representations, 1881 Extraction decided to purchase the Kiinja Extractor even though it was more expensive than other options it had considered. [*Id.* at ¶¶ 35–36]. To complete the sale, 1881 Extraction and Kiinja executed a "General Terms and Conditions of Sale" Agreement (the "Agreement") and a Purchase Order. [*Id.* at ¶¶ 37–38]; *see also* [Doc. 8-1 (the Agreement); Doc. 8-2 (the Purchase Order)].[1] 1881 Extraction paid $614,800 for the Kiinja Extractor. [Doc. 8 at ¶ 39]. In addition, to house the Kiinja Extractor in its warehouse facility, 1881 Extraction made substantial modifications to the facility, which cost over $100,000. [*Id.* at

---

[1] "A district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014). Neither Party disputes the authenticity of the Agreement or Purchase Order, which are referenced in the Amended Complaint and appear to be central to Plaintiff's claims. Accordingly, the Court may properly consider the contents of these documents in ruling on the Motion to Dismiss.

¶ 42].  These modifications were necessary for the Kiinja Extractor specifically and would not have been made for another extraction machine.  [*Id.* at ¶¶ 43–44].

At the time of the purchase, Kiinja represented to 1881 Extraction that it would deliver the Kiinja Extractor within three months.  [*Id.* at ¶ 46].  This timeline was "critical" to 1881 Extraction, as it required delivery of the Kiinja Extractor before it would take orders for extraction.  [*Id.* at ¶ 47].  From September 1, 2019 through January 31, 2020, 1881 Extraction asked for updates on the delivery status of the Kiinja Extractor; Kiinja repeatedly responded that it had not finished building the Kiinja Extractor, but that it would be delivered soon.  [*Id.* at ¶¶ 48–49].  Due to the delay in delivery, 1881 Extraction had to lay off employees it had hired and lost a sale to provide hemp oil.  [*Id.* at ¶¶ 51–52].  After a scheduled delivery and subsequent cancelation by Kiinja, the Kiinja Extractor was eventually delivered to Plaintiff's facility on or around February 5, 2020. [*Id.* at ¶¶ 53–54].

Kiinja assisted in the installation of the Kiinja Extractor through February 10, 2020.  [*Id.* at ¶¶ 54, 57].  The Kiinja Extractor failed to ever work properly and many times failed to work at all.  [*Id.* at ¶ 55].  Then, on or about February 26, 2020, the Kiinja Extractor exploded during normal operations, which caused damage to the facility and significant emotional trauma to Plaintiff's employees.  [*Id.* at ¶¶ 58–59].  1881 Extraction informed Kiinja of the explosion; shortly thereafter, Kiinja advised 1881 Extraction that the explosion was caused by a manufacturing defect.  [*Id.* at ¶ 61].

On or around March 11, 2020, Mr. Jackson, on behalf of Kiinja, visited 1881 Extraction's facility to repair the Kiinja Extractor; however, Mr. Jackson was unable to get the Kiinja Extractor working properly after working on the machine for three to five days.  [*Id.* at ¶ 62].  Mr. Jackson

left the facility without the Kiinja Extractor working properly, "leaving 1881 [Extraction] with a non-functioning or malfunctioning (and dangerous) machine."  [*Id.* at ¶ 63].

1881 Extraction alleges that in the months following the explosion, it has observed at least 18 separate malfunctions of the Kiinja Extractor.  [*Id.* at ¶¶ 64–66].  Though 1881 Extraction has repeatedly and timely notified Kiinja of these issues, Kiinja has continually failed to correctly install, fix, repair, or replace the Kiinja Extractor.  [*Id.* at ¶ 69].  The Kiinja Extractor has never been fully operational.  [*Id.* at ¶ 66].  And as a result of the Kiinja Extractor's operational problems, 1881 Extraction has been unable to accept orders or sales and has "lost multiple extraction contracts."  [*Id.* at ¶¶ 67, 77].

1881 Extraction initiated this lawsuit on May 18, 2022, [Doc. 1], and filed the Amended Complaint on June 6, 2022.  [Doc. 8].  It asserts seven claims for relief: (1) breach of contract against Kiinja ("Count I"); (2) breach of implied warranty of merchantability against Kiinja ("Count II"); (3) breach of implied warranty of fitness against Kiinja ("Count III"); (4) breach of express warranty against Kiinja ("Count IV"); (5) fraudulent misrepresentation against all Defendants ("Count V"); (6) negligent misrepresentation against all Defendants ("Count VI"); and (7) a deceptive trade practices claim under the Colorado Consumer Protection Act ("CCPA") against Kiinja ("Count VII").  [*Id.* at 20–29].

On August 15, 2022, Defendants filed the instant Motion to Dismiss.  [Doc. 26].  They move for dismissal of Counts II and III that assert breach of implied warranty claims; Counts V and VI that assert fraudulent and negligent misrepresentation claims; and Count VII that asserts a CCPA claim; they do not seek dismissal of the breach of contract claim or breach of express warranty claim under Counts I and IV.  Se *generally* [*id.*].  In addition, they seek "dismissal of

all Plaintiff's damage claims in excess of the purchase price of the alleged defective Extractor with respect to Counts I–VII under Rule 12(b)(6)." [*Id.* at 16 (emphasis and capitals omitted)].

In the alternative, Defendants move for a more definite statement under Rule 12(e) with respect to the fraudulent and negligent misrepresentation claims against Defendants Jackson, Harris, and TigerShark, [*id.* at 17–18], and request that the Court strike Plaintiff's request for treble damages under the CCPA under Rule 12(f). [*Id.* at 18–19]. 1881 Extraction has responded to the Motion, *see* [Doc. 32], and Defendants have replied. [Doc. 33]. The matter is thus ripe for resolution.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary

to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.  Breach of Implied Warranties

First, Defendants challenge Plaintiff's claims of breach of implied warranty of merchantability and breach of implied warranty of fitness, each of which are asserted against Kiinja only.  [Doc. 26 at 3].  Count II for breach of implied warranty of merchantability is asserted under § 4-2-314 of the Colorado Revised Statutes.  *See* [Doc. 8 at ¶ 86].  This statute provides that "[u]nless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale" and requires that merchantable goods must be "fit for the ordinary purposes of which such goods are used."  Colo. Rev. Stat. §§ 4-2-314(1), (2)(c).  Similarly, Plaintiff's claim for breach of implied warranty of fitness is based in statute; Count III arises out of § 4-2-315, which provides that

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 4-2-316, an implied warranty that the goods shall be fit for such purpose.

*Id.* at § 4-2-315; *see also* [Doc. 8 at ¶ 93].

Defendants maintain that these claims are barred by a waiver of implied warranties in the Agreement.  [Doc. 26 at 4–5].  The relevant provision in the Agreement states:

> Kiinja makes only those warranties with respect to Product expressly identified as "warranties" and set forth in Kiinja's current operating manual or catalog, or in a specific written warranty included with and covering Product, if any. . . .  THE WARRANTIES IDENTIFIED IN THE FIRST SENTENCE OF THIS PARAGRAPH ARE KIINJA'S SOLE AND EXCLUSIVE WARRANTIES WITH RESPECT TO PRODUCT AND ARE IN LIEU OF ALL OTHER WARRANTIES, STATUTORY, EXPRESS OR IMPLIED, ALL OF WHICH OTHER WARRANTIES ARE EXPRESSLY DISCLAIMED, INCLUDING

WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, OR REGARDING RESULTS OBTAINED THROUGH THE USE OF ANY PRODUCT (INCLUDING, WITHOUT LIMITATION, ANY CLAIM OF INACCURATE, INVALID OR INCOMPLETE RESULTS), WHETHER ARISING FROM A STATUTE OR OTHERWISE IN LAW OR FROM A COURSE OF PERFORMANCE, DEALING OR USAGE OF TRADE.

[Doc. 8-1 at 3–4]. Defendants argue that because 1881 Extraction waived any potential claims based on any breach of an implied warranty, including the implied warranties of merchantability and fitness for a particular purpose, Plaintiff cannot state a claim for breach of implied warranty under Rule 12(b)(6). [Doc. 26 at 5–6].

In its Response, 1881 Extraction offers a number of counterarguments which appear interrelated, but does not dispute that the language of the Agreement disclaims any implied warranties. It appears that Plaintiff's primary argument is that the warranty-limiting provision in the Agreement is ineffective. *See* [Doc. 32 at 4]. In support, Plaintiff cites *O'Neil v. International Harvester Co.*, 575 P.2d 862 (Colo. App. 1978), for the proposition that "[w]here the oral representations reasonably relied upon by a buyer 'are totally inconsistent with the warranty exclusion clause of the [contract,]' a provision limiting said oral representations is inoperative." [Doc. 32 at 4].[2] Plaintiff argues that because it has alleged in the Amended Complaint that Kiinja

---

[2] Seemingly in support of its position that the Court may consider allegations of Defendants' prior oral representations in construing the Agreement, Plaintiff notes that the Amended Complaint "does not allege [that] the parties entered into a fully integrated contract, nor that the Agreement and/or Purchase Order comprise a fully integrated contract. Rather, the [Amended Complaint] alleges that Plaintiff and Kiinja entered into a contract, and that the Purchase Order and Agreement are evidence of said contract." [Doc. 32 at 3–4]. Plaintiff does not expound on this argument; however, based on Plaintiff's other arguments, the Court infers that Plaintiff is attempting to suggest that the parol evidence rule does not apply in this case. *See* [*id.* at 4 ("[T]o the extent that Defendants argue that the Agreement and/or Purchase Order constitute a fully integrated contract, a well recognized exception to the parol evidence rule is when a party to the contract can show fraud in the inducement of the contract.") (quotation and alteration marks omitted)]; *see also Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1165 (Colo. App. 2010) (the parol evidence rule applies only to fully integrated contracts). The parol evidence rule dictates that "the

made oral warranties prior to execution of the Agreement, "there is a material issue of fact for resolution." [*Id.* (citing *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1181 (D. Colo. 2002))]; *see also* [*id.* at 5]. For the reasons explained below, the Court is unpersuaded by this argument.

In *O'Neil*, the Colorado Court of Appeals reviewed a trial court's grant of summary judgment on the plaintiff's claims of breach of express and implied warranties arising from the sale of a motor vehicle. *See generally* 575 P.2d at 864–66. The trial court had found in favor of the defendant based on a contractual provision stating that vehicle was sold "as is[,] without warranty of any character expressed or implied, unless purchaser has received from seller a separate written warranty executed by seller." *Id.* at 864 (capital letters omitted). On appeal, the *O'Neil* court concluded that the trial court had erred in granting summary judgment on the plaintiff's breach of express warranty claim. *Id.* at 865. Its decision was based on Colo. Rev. Stat. § 4-2-316(1), which provides:

> Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable.

Colo. Rev. Stat. § 4-2-316(1) (citation omitted). Notably, the *O'Neil* court concluded that because the express oral representations made to the plaintiff prior to the sale were "totally inconsistent with the warranty exclusion clause of the contract," the provision limiting the express warranty was "inoperative" under § 4-2-316(1). *O'Neil*, 575 P.3d at 865. The court did not make the same

---

terms of a contract intended to represent a final and complete integration of the parties' agreement are enforceable and parol evidence offered to establish the existence of prior or contemporaneous agreements is inadmissible to vary the terms of such contract." *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991). For the reasons set forth in this section, the Court need not consider whether the parol evidence rule applies in this case in this context.

ruling with respect to the plaintiff's breach of implied warranty claim, affirming summary judgment in favor of the defendants on that claim. *Id.* at 864.

Plaintiff does not explain how *O'Neil* and § 4-2-316(1) apply to this case, and the Court concludes that they do not. Section 4-2-316(1) provides that where a warranty-limiting provision contradicts "[w]ords or conduct relevant to the creation of an *express* warranty," the provision and the contradictory conduct must be construed as consistent, if reasonable, but if such construction would be unreasonable, the warranty-limiting provision is inoperative. Colo. Rev. Stat. § 4-2-316(1) (emphasis added). Even assuming that Plaintiff has sufficiently alleged facts establishing that the warranty-limiting provision in the Agreement contradicts Kiinja's alleged oral representations made prior to the execution of the Agreement, and assuming, without deciding, that Plaintiff has alleged that those oral representations amounted to express warranties,[3] § 4-2-316(1) would only render the Agreement's warranty-limiting provision inoperative to the extent that it contradictorily waives claims based on a breach of *express* warranty. Stated differently, there is no apparent contradiction (and Plaintiff has not identified any) between Kiinja's alleged words or conduct "relevant to the creation of an *express* warranty" and the Agreement's waiver of *implied* warranties. And for this reason, the portion of the Agreement waiving implied statutory warranties would not be deemed inoperative under § 4-2-316(1).[4] In sum, 1881 Extraction has not

---

[3] The Court notes that Plaintiff's claim for breach of express warranty is based on alleged warranties made in the Purchase Order, rather than any express oral representations made prior to the purchase. *See* [Doc. 8 at ¶ 100].

[4] Indeed, the Agreement contains a severance provision, providing that

> [i]f any provision of these Terms shall be held to be invalid or unenforceable for any reason, such provisions shall, to the extent of such invalidity or enforceability, be severed *without in any way affecting the remainder of such provision* or any other provision thereof, all of which shall continue in full force and effect.

[Doc. 8-1 at 9 (emphasis added)].

explained why the Agreement's exclusion of liability for all implied warranties, including statutory implied warranties, is inapplicable here.

The implied warranties set forth in §§ 4-2-314 and 4-2-315 are each excludable or modifiable by § 4-2-316. Specifically, this statute provides that the implied warranty of merchantability may be excluded so long as the exclusionary language "mention[s] merchantability" and, if in writing, is conspicuous. Colo. Rev. Stat. § 4-2-316(2). With respect to the implied warranty of fitness for a particular purposes, any exclusionary language "must be by a writing and conspicuous." *Id.* 1881 Extraction does not argue that the Agreement's exclusions fall short of this standard, and the Court concludes that they fall within the statute's parameters. The provision is in writing, in all capital letters, and expressly mentions that it waives the implied warranties of merchantability and fitness. [Doc. 8-1 at 3–4]; *see also* Colo. Rev. Stat. § 4-1-201(10) (explaining that a conspicuous disclaimer includes a disclaimer that is in "contrasting type" to the surrounding language); *Irwin Seating Co. v. Int'l Bus. Machines Corp.*, 306 F. App'x 239, 244 (6th Cir. 2009) (applying Colorado law and concluding that a disclaimer in all capital letters was conspicuous).

Because the Agreement expressly excludes liability for breach of the implied warranties, 1881 Extraction cannot state a claim for a breach of either warranty. Accordingly, the Motion to Dismiss is **GRANTED** with respect to Counts II and III and these claims are **DISMISSED with prejudice**. *See Plains Dedicated Fin. LLC v. Peterbilt Motors Co.*, No. 22-cv-01615-CMA-MDB, 2022 WL 17770524, at *7 (D. Colo. Dec. 19, 2022) (recommending that breach of implied warranty claims be dismissed with prejudice where there was a contractual provision waiving those claims), *report and recommendation adopted*, 2023 WL 120996 (D. Colo. Jan. 5, 2023); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is

appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## II.      Fraudulent and Negligent Misrepresentation

Defendants next turn to Plaintiff's claims for fraudulent and negligent misrepresentation. They argue that these claims should be dismissed because they are barred by the economic loss rule. [Doc. 26 at 6]. In the alternative, they argue that Plaintiff fails to state a claim under Rule 12(b)(6) for either type of misrepresentation. [*Id.* at 8]. Specifically, Defendants contend that these claims should be dismissed as to Mr. Harris and TigerShark for failure to allege that these Defendants' alleged misrepresentations caused Plaintiff's damages. [*Id.* at 12]. And finally, Defendants argue that if these counts are not dismissed, Plaintiff should be required to replead as to Defendants Jackson, Harris, and TigerShark pursuant to Rule 12(e). [*Id.* at 17–18].

### A.      The Economic Loss Doctrine

Colorado's economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). The rule "serves to maintain a distinction between contract and tort law." *Id.* at 1262. To determine whether the economic loss rule applies, courts "focus on the source of the duty alleged to have been violated." *Id.* at 1263. If the claim is based on "the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Id.* But if there is no independent duty separate from those duties imposed by the contract, the economic loss rule bars the claim. *Id.* at 1264–65.

The Colorado Supreme Court "has identified three factors that aid in determining whether the duty allegedly breached is independent of the parties' contract: (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty." *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 293 (Colo. App. 2009) (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)). A duty of care exists separately under tort law if (1) the duty arises from a source other than the contract and (2) the duty is not also imposed by the contract. *Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1231 (Colo. App. 2012).

Defendants contend that the fraudulent and negligent misrepresentation claims are barred by the economic loss doctrine because Plaintiff requests the same damages for its misrepresentation claims as it does for its breach of contract and breach of warranty claims. [Doc. 26 at 8]. Furthermore, Defendants contend that "Plaintiff fails to properly allege there is a duty independent of the contracts" and note that "Plaintiff's own pleading explains that the purpose of the contracts was to purchase a turnkey extractor." [*Id.*]. Defendants conclude that Plaintiff's misrepresentation claims "are based on the contract and the economic loss rule bars" those claims. [*Id.*].

The Court respectfully disagrees. "To survive a motion to dismiss based on the economic loss rule, [a plaintiff] merely has to allege sufficient facts, taken in the light most favorable to [it], that would amount to the violation of a tort duty that is independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016). 1881 Extraction alleges that Defendants "made numerous representations in order to convince 1881 [Extraction] to purchase the Kiinja Extractor," [Doc. 8 at ¶ 30], and that, "[i]n reliance on the false representations," it "decided to

12

purchase the Kiinja Extractor." [*Id.* at ¶ 36]. To facilitate the sale, 1881 Extraction entered into a contract with Kiinja. [*Id.* at ¶¶ 37–38].

Stated differently, Plaintiff challenges Defendants' *pre-contractual* conduct. As recently recognized by the Colorado Court of Appeals, "[t]he economic loss rule does not apply to claims arising from a defendant's pre-contractual conduct because, at that time, there was no contract that could have subsumed identical tort duties." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 120 (Colo. App. 2021) (further noting that, "[i]n contrast, fraud occurring during the parties' performance of their contract is post-contractual and may be barred by the economic loss rule"). Here, Plaintiff alleges that Defendants fraudulently or negligently made misrepresentations that ultimately caused Plaintiff to enter into the contract to purchase the Kiinja Extractor—allegations akin to asserting fraud in the inducement of a contract. Contrary to allegations of fraud "relating to the performance of a contract," "[a] claim for fraud in the inducement of a contract is not barred by the economic loss rule." *McNees v. Ocwen Loan Servicing, LLC*, 853 F. App'x 211, 215 (10th Cir. 2021) (citing *Van Rees*, 373 P.3d at 607); *see also Vyanet Operating Grp., Inc. v. Maurice*, No. 21-cv-02085-CMA-SKC, 2022 WL 4008043, at *4 (D. Colo. Sept. 2, 2022) (denying motion to dismiss based on the economic loss rule where the plaintiff alleged that the defendants "made false representations and concealed facts 'to induce' [the plaintiff] to enter into the Agreement to its detriment"); *Evanston Ins. Co. v. Aminokit Lab'ys, Inc.*, No. 15-cv-02665-RM-NYW, 2017 WL 4350363, at *6 (D. Colo. July 5, 2017) ("The allegations regarding Defendants' actions that constitute fraud are that they induced Plaintiff to act which later resulted in engagement in the contractual relationship with Defendant—events that preceded the formation of the contract that consummated the parties' insurance relationship. . . . Plaintiff's fraud claims, although premised on representations made in the course of contractual

negotiations, arose sufficiently independently of the contract and on that basis are excepted from the economic loss rule."). Similarly, the Tenth Circuit has concluded that a negligent misrepresentation claim will not be barred by the economic loss rule where the alleged misrepresentation was not "a statement made in fulfilling a specific duty under the contract" but where the defendant instead allegedly "supplied purportedly false information . . . in the course of a business transaction." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162–63 (10th Cir. 2008) (applying Colorado law).

The Court is persuaded by this authority. Though Defendants emphasize the fact that the Amended Complaint seeks the same relief for all of Plaintiff's claims, *see* [Doc. 26 at 8]; *see also* [Doc. 8 at ¶¶ 84, 113, 119], the relief sought is but one factor considered in determining whether the duty allegedly breached in tort is separate from the contract. *Hamon Contractors*, 229 P.3d at 293. The Court must also consider whether there is a recognized common-law duty that differs from any contractual duty and whether that common-law duty is imposed in the subject contract. *Id.*; *see also Former TCHR, LLC*, 317 P.3d at 1231. Defendants have directed the Court to no provision in the Agreement that subsumes the "duty to not make pre-contractual negligent or fraudulent misrepresentations." *Dream Finders Homes*, 506 P.3d at 123; *see generally* [Doc. 26]. Construing Plaintiff's allegations in the light most favorable to it, the Court concludes that Plaintiff has alleged facts showing "the violation of a tort duty that is independent of the contract." *Van Rees*, 373 P.3d at 608. The Court does not find dismissal appropriate on this basis.

### B.     Failure to State a Claim

In the alternative, Defendants argue that Plaintiff fails to state a claim of either fraudulent or negligent misrepresentation. [Doc. 26 at 9]. To adequately state a claim of negligent misrepresentation, a plaintiff must plausibly allege that

> (1) one in the course of his or her business, profession or employment; (2) ma[de] a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (citing *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank of Denver, N.A.*, 892 P.2d 230, 236–38 (Colo. 1995)).   Similarly, "[a] claim for fraudulent misrepresentation has four elements: 'a knowing misrepresentation of material fact, reliance on the material misrepresentation, the right or justification in relying on the misrepresentation, and reliance resulting in damages.'"   *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1223 (D. Colo. 2014) (quoting *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003)).   Defendants first contend that Plaintiff fails to allege the "justifiable reliance" element of either claim.   [Doc. 26 at 8].   They alternatively maintain that the Amended Complaint does not sufficiently allege causation with respect to Plaintiff's claims against TigerShark and Mr. Harris.   [*Id.* at 12].   The Court addresses these arguments below.

### 1.     Reliance

First, Defendants argue that the Amended Complaint fails to plausibly allege that 1881 Extraction justifiably relied upon any misrepresentations made by Defendants.   [Doc. 26 at 8].  They base their argument on the following language contained in the Agreement:

> These Terms, together with Kiinja's Quotation, any applicable label license or patent statement or other written conditions of use, any other terms and conditions expressly agreed to in writing by an authorized representative of Kiinja [](collectively, "Kiinja's Terms"), and buyer's statement on its purchase order . . . constitute the complete, exclusive and entire agreement between Kiinja and buyer with respect to purchases of Product (unless other terms and conditions are expressly designated to be applicable by Kiinja in writing), and Kiinja's offer to sell Product is expressly limited to such terms.   Such terms shall take precedence over and supersede and replace all prior or contemporaneous understandings or agreements, written or oral, and any of buyer's additional or different terms and conditions, which are hereby rejected and shall be void.

* * *

Any description of Product recited in Kiinja's Quotation is for the sole purpose of identifying Product, and any such description is not part of any contract between Kiinja and buyer and does not constitute a warranty that Product shall conform to that description.  Any sample or model used in connection with Kiinja's Quotation is for illustrative purposes only, and is not part of any contract between Kiinja and buyer and does not constitute a warranty that Product will conform to the sample or model.  No affirmation of fact or promise made by Kiinja, whether or not in Kiinja's Quotation, shall constitute a warranty that Product will conform to the affirmation or promise.

[*Id.* at 9–11; Doc. 8-1 at 3–4, 8].  Defendants argue that, based on this language, "Plaintiff, simply as a matter of law, cannot properly plead justifiable reliance in light of the contract limitations." [Doc. 26 at 11].  Defendants do not expand on this argument.  *See* [*id.*].

"Under Colorado law, certain tort claims may be preempted by exculpatory contractual language." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1240 (D. Colo. 2010) (footnote omitted).  But "a standard integration clause or generic 'non-reliance' provision is not enough; the disclaimer must be 'couched in clear and specific language' to be effective." *Id.* (quoting *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 74 (Colo. 1991)); *see also Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 106 (10th Cir. 2007) (Holloway, J., concurring in part and dissenting in part) (describing a "high standard for contractual language to be effective in barring tort claims" under Colorado law).  "Whether a party's reliance is justified is generally a question of fact." *Young v. Kiewit Corp.*, No. 17-cv-01251-WYD-MEH, 2018 WL 3382928, at *4 (D. Colo. Jan. 25, 2018) (citing *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010)).

In support of their argument that the Agreement precludes any justifiable reliance on the part of Plaintiff, Defendants rely on two cases, neither of which is binding and both of which are distinguishable.  In *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C. Cir. 1988), the

D.C. Circuit, applying either Maryland or District of Columbia common law, concluded that a plaintiff had failed to allege fraudulent misrepresentation where the plaintiffs alleged that the defendants had made, in unexecuted agreements prior to the execution of the final contract, misrepresentations about their future conduct that induced the plaintiffs to enter into the contract. *One-O-One*, 848 F.2d at 1286 n.1, 1286–87.  The D.C. Circuit concluded that an integration clause in the final agreement, which provided that the final agreement superseded "any and all previous understandings and agreements," precluded the plaintiffs' ability to allege reasonable reliance for purposes of stating a fraudulent misrepresentation claim.  *Id.*  Setting aside the fact that neither Maryland nor District of Columbia law applies in this case, the Court notes that the D.C. Circuit has since clarified that it had "not intended [in *One-O-One*] to say that an integration clause bars fraud-in-the-inducement claims generally or confines them to claims of fraud in execution." *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995).  "Such a reading would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate."  *Id.*  Courts in the District of Columbia post-*One-O-One* have distinguished between "fraudulent representations regarding future behavior and other types of fraudulent representations," e.g., "concealment of the condition of the [p]roperty" at issue in the contract.  *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 203–04 (D.D.C. 2016); *see also Drake v. McNair*, 993 A.2d 607, 624 (D.C. 2010).  The Court is not persuaded that *One-O-One* stands for the proposition that an integration clause can shield a seller from alleged fraudulent or negligent misrepresentations concerning the quality or condition of a product made in the course of dealing, as Plaintiff alleges here.[5]

---

[5]  It is unclear whether Plaintiff's misrepresentation claims are based on the alleged misrepresentations pertaining to Kiinja's ability or willingness to repair or upgrade the Kiinja Extractor as needed (in other words, promises as to future conduct).  *Compare* [Doc. 8 at ¶¶ 82, 89, 96, 102 (Plaintiff expressly relying on Kiinja's alleged failure to remedy defects in its first four claims)] *with* [*id.* at ¶¶ 106–19 (Plaintiff not mentioning any misrepresentations as to repairs or

In addition, Defendants rely on *Miranda-Martinez v. EWV, LLC*, 2015 Colo. Dist. LEXIS 2411 (Colo. Dist. Ct. July 14, 2015), wherein the District Court for Weld County, Colorado concluded that a defendant was entitled to summary judgment on the plaintiff's fraudulent and negligent misrepresentation claims arising out of mobile home purchases where the plaintiff had agreed, in the final contract, that he "ha[d] not relied upon any statement or representation of any kind by seller" and could thus not "now claim that he reasonably relied on any of Defendants' alleged precontractual statements and representations." *Miranda-Martinez*, 2015 Colo. Dist. LEXIS 2411, at *18, *19. But this case is readily distinguishable, given that Defendants have not directed the Court to any contractual language containing a similar reliance disclaimer.

Aside from quoting the Agreement's language and citing these cases, Defendants make no argument explaining why these contract provisions are sufficiently "clear and specific," as required by *Keller*, to preclude Plaintiff's misrepresentation claims at the pleading stage. *See* [Doc. 26 at 8–12]. Courts have concluded that to meet this clarity threshold, a contract should "contain . . . explicit disclaimer-of-reliance language." *Xedar Corp. v. Rakestraw*, No. 12-cv-01907-CMA-BNB, 2013 WL 93196, at *4 (D. Colo. Jan. 8, 2013). The Agreement provisions relied upon by Defendants do not, instead including "clauses that describe it as the final and complete expression of the parties' agreement with no external promises, representations, or other statements." *Kcooper Brands, Inc. v. Ezzigroup, Inc.*, No. 22-cv-00194-MEH, 2022 WL 1500775, at *6 (D. Colo. May 12, 2022). "[S]uch boilerplate clauses (not couched in clear and specific language) do not present a general bar to the tort claim of misrepresentation." *Id.*; *see also Keller*, 819 P.2d at 74 (a general integration clause will not itself "bar a claim for negligent or fraudulent

---

upgrades in misrepresentation claims)]. Assuming that Plaintiff's claims are based on these allegations, the Court concludes that dismissal is not appropriate at this time.

misrepresentation"); *compare Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 18 (Colo. App. 2010) (affirming conclusion that the plaintiff's reliance on the defendant's nondisclosure of net losses was not reasonable where the contract disclaimed accuracy of income information and informed the plaintiff that it could not rely on the information).

Mindful that whether Plaintiff's reliance was justified is a question of fact, *see Pownell v. Credo Petroleum Corp.*, No. 09-cv-01540-WYD-KLM, 2011 WL 2580765, at *3 (D. Colo. June 29, 2011), the Court cannot conclude at the pleading stage that the Agreement provisions render Plaintiff's allegations of justifiable reliance implausible.   Accordingly, the Court declines to dismiss Plaintiff's misrepresentation claims on this basis.[6]

### 2.   Causation

In the alternative, Defendants argue that the misrepresentation claims should be dismissed against Mr. Harris and TigerShark because "Plaintiff fails to plead but for causation with respect to the [alleged misrepresentations] made by" these Defendants, noting that "Plaintiff's pleadings limit causation to Kiinja and its employees." [Doc. 26 at 13–14].  For this reason, they argue that Plaintiff cannot "properly plead but for reliance on any allegations by Harris or TigerShark."  [*Id.* at 14].[7]

---

[6] In addition, the Court notes that Kiinja is the only Defendant that is a party to the Agreement. *See* [Doc. 8-1]. While Defendants cursorily suggest that their arguments based on the Agreement apply equally to Mr. Jackson, TigerShark, and Mr. Harris, these arguments are unsupported by any citations to legal authority.  *See* [Doc. 26 at 12].  This lack of developed argument provides an additional basis to reject this argument.  *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1239 (10th Cir. 2010).

[7] Given the fact that Plaintiff alleges that it relied on multiple Defendants' alleged misrepresentations in the purchase of the Kiinja Extractor, it is unclear whether Plaintiff must establish but-for causation as to each Defendant's statements.  "Colorado law generally requires proof of but-for causation except when there exist multiple but-for causes that were each independently sufficient to cause the harm at issue."  *Banks v. Munir*, No. 20-cv-03729-DDD-KMT, 2021 WL 3728101, at *2 (D. Colo. June 9, 2021) (citing *June v. Union Carbide Corp.*, 577 F.3d 1234, 1244 (10th Cir. 2009)).  But neither Party addresses this issue and the Court concludes

In response, 1881 Extraction asserts that it "properly alleges misrepresentations by Harris and TigerShark," directing the Court to paragraphs 2, 36, and 63 in the Amended Complaint. *See* [Doc. 32 at 12–13]. Specifically, 1881 Extraction alleges that "1881 [Extraction], in reliance on numerous representations from Defendants Kiinja, Jackson, and TigerShark, purchased an extraction machine from Kiinja." [Doc. 8 at ¶ 2]. After detailing a number of alleged misrepresentations made at the June 11, 2019 meeting, *see* [*id.* at ¶ 30], 1881 Extraction asserts that "[i]n reliance on the false representations set forth above, 1881 [Extraction] decided to purchase the Kiinja Extractor even though it was more expensive than other extractors [it] had considered." [*Id.* at ¶ 36]. And finally, Plaintiff alleges that it "paid $614,800 to Kiinja [for the Kiinja Extractor], based on Kiinja's and TigerShark's misrepresentations as to reliability, ease-of-use, and functionality." [*Id.* at ¶ 63]. In their Reply, Defendants contend that these allegations are insufficient to establish causation. [Doc. 33 at 8].

The Court respectfully agrees with Defendants. While 1881 Extraction alleges that it relied upon misrepresentations made by TigerShark and Mr. Harris in purchasing the Kiinja Extractor, *see* [Doc. 8 at ¶¶ 2, 36, 63], it does not allege that this reliance caused its damages; instead, it alleges only that but for its reliance on *Kiinja's* misrepresentations, it would not have purchased the Kiinja Extractor, and that *Kiinja's* misrepresentations caused its damages. *See, e.g.*, [*id.* at ¶¶ 40, 112–13, 118–19 (alleging damages "[a]s a result of Kiinja's misrepresentations")]. In addition, there are no averments that either TigerShark or Mr. Harris caused Kiinja to make the misrepresentations attributed to it. *See generally* [*id.*]. As set forth above, causation is a requisite element of both fraudulent and negligent misrepresentation claims. *Allen*, 252 P.3d at 482; *Clark*,

---

it need not reach it; for the reasons set forth below, regardless of the causation pleading standard applicable to this case, 1881 Extraction has not met it with respect to Defendants Harris and TigerShark.

69 F. Supp. 3d. at 1223.  Courts in this District have applied the heightened pleading requirements of Rule 9 to both fraudulent and negligent misrepresentation claims, *see Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1095 n.6 (D. Colo. 2022) (collecting cases), and Plaintiff's omission of sufficient factual allegations that its reliance on TigerShark's or Mr. Harris's representations caused its damages warrants dismissal of its misrepresentation claims against these Defendants. *See Whitney v. State of N.M.*, 113 F.3d 1170, 1175 (10th Cir. 1997) (observing that a court cannot "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf").

For these reasons, the Motion to Dismiss is **GRANTED** with respect to Counts V and VI, insofar as they are asserted against Defendants TigerShark and Harris.  These claims are **DISMISSED without prejudice**.[8]

## C.    Request for More Definite Statement Under Rule 12(e)

In addition, Defendants argue that the Court should require Plaintiff to submit a more definite statement as to the negligent and fraudulent misrepresentation claims against Defendant Jackson[9] under Rule 12(e).  [Doc. 26 at 17].  A party may seek a more definite statement of another's claims when the pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (3d ed. 2022) (Rule 12(e) applies when

---

[8] Defendants argue that the Court should dismiss these claims with prejudice. [Doc. 26 at 14]. However, "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (internal quotation marks omitted).  Defendants do not argue that amendment would be futile and do not otherwise explain why dismissal with prejudice is appropriate; accordingly, the Court will dismiss these claims without prejudice.

[9] Defendants also raise this same argument with respect to Defendants Harris and TigerShark. [Doc. 26 at 17].  Because the Court has already dismissed Plaintiff's claims against them, the Court does not address these Defendants in this section.

the pleading is "so vague or ambiguous that the opposing party cannot respond—even with a simple denial—in good faith, without prejudice to himself"). "Motions for more definite statements under Rule 12(e) . . . are generally not favored by the courts because of the liberal pleading requirements embodied in Rule 8(a)." *Mullins v. I. C. Sys., Inc.*, No. 07-cv-00397-RPM-PAC, 2007 WL 1795871, at *2 (D. Colo. June 21, 2007). "If the opposing party is able to determine the issues he must respond to, the pleading is sufficient." *Id.*

Defendants take issue with the fact that Counts V and VI are asserted against all Defendants and incorporate all of the prior allegations in the Amended Complaint, including paragraphs comprising allegations and claims made against only Kiinja. [Doc. 26 at 18]. It appears that Defendants are attempting to argue that it is "ambiguous" whether the incorporated allegations are alleged only against Kiinja or are also alleged against Defendant Jackson due to the incorporation by reference of the allegations into Counts V and VI. *See* [*id.*]. Defendants argue that the Court "should require Plaintiff to replead [Counts V and VI] to expressly set forth allegations [in paragraphs 78–113] which are alleged against all Defendants to allow Defendants to respond in accordance with Rule 7." [*Id.*].

Defendants cite no authority demonstrating that this is an appropriate basis to require a more definite statement under Rule 12(e), *see* [*id.*], and the Court cannot conclude that it is. The Court is unpersuaded that, simply by incorporating by reference the previous allegations in the Amended Complaint, including those directed at Kiinja specifically, Plaintiff has somehow "alleged [those allegations] against [Mr. Jackson] by their incorporation" into Counts V and VI. While "technically, it is inappropriate for a plaintiff to incorporate by reference *all* prior allegations into each of their claims, in this Court's experience, it is a practice that is almost universally employed by the attorneys who practice before this Court." *Swenson v. All. Moving & Storage*

*LLC*, No. 21-cv-01968-CMA-STV, 2022 WL 1508506, at *6 (D. Colo. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 1500778 (D. Colo. May 12, 2022). The Amended Complaint alleges that Defendant Jackson "is the president of Kiinja, acts as Kiinja's agent, and has actual, implied and apparent authority to make representations on behalf of Kiinja and bind Kiinja contractually," [Doc. 8 at ¶ 11], and that Defendant Jackson made a number of misrepresentations to induce 1881 Extraction to purchase the Kiinja Extractor. [*Id.* at ¶ 30]. While Counts V and VI reference only Kiinja expressly, *see* [*id.* at ¶¶ 106–19], this might have been a proper basis for a request to dismiss under Rule 12(b)(6), not a request for a more definite statement under Rule 12(e). *See Montagriff v. Adams Cnty. Sch. Dist. 14*, 128 F.R.D. 117, 117–18 (D. Colo. 1989) ("Rule 12(e) is designed to strike at unintelligibility rather than want of detail." (quotation omitted)).

"As long as the pleading fairly apprises the opposing party of the nature of the claim, the motion for more definite statement should not be granted." *Id.* at 118. Indeed, the Federal Rules are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It would not be in the interest of judicial economy to require Plaintiff to replead Counts V and VI against Defendant Jackson, potentially inviting another round of Rule 12(b)(6) briefing raising arguments that Defendant could have raised in the instant Motion to Dismiss. *Cf.* Fed. R. Civ. P. 12(g) (a party cannot file a successive Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion"). Indeed, Defendants were able to draft a robust Motion to Dismiss challenging the sufficiency of the allegations, and in particular, Plaintiff's misrepresentation claims, based on the operative Amended Complaint. Moreover, additional details that Defendant Jackson seeks with respect to these claims may be inquired about

during discovery. Accordingly, insofar as Defendants request a more definite statement, the Motion is **DENIED**.

## III.   Colorado Consumer Protection Act

Next, Defendants seek dismissal of 1881 Extraction's CCPA claim, which is asserted against Kiinja only. *See* [Doc. 8 at 27].

> A valid claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of [the] defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury."

*Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003)). "All elements of a CCPA claim must be met; otherwise, the claim falls as a matter of law." *Id.*

Defendants argue that the CCPA claim should be dismissed for failure to adequately plead the third element—that Kiinja's conduct significantly impacts the public as actual or potential customers of Kiinja's. [Doc. 26 at 15]. Defendants suggest that because Plaintiff also raises a claim of breach of warranty for a specific purpose, which requires Plaintiff to allege that "the transaction covered a special use of the [E]xtractor as opposed to its ordinary use," this "indicates a private transaction," as opposed to a public one. [*Id.*]. Furthermore, they argue that the "numerous private communications Plaintiff alleges that it relied on further indicate a purely private transaction." [*Id.*]. Defendants suggest that Plaintiff "[c]learly . . . alleges nothing more than a private transaction as opposed to one which significantly impacts the public as actual or potential consumers of [Kiinja's] goods, services, or property." [*Id.*].

The Court is respectfully unpersuaded by this argument.  First, the fact that 1881 Extraction asserts both a CCPA claim and an implied warranty of fitness claim does not necessitate dismissal of the CCPA claim.  Defendants have cited no authority demonstrating that these two claims are mutually exclusive, but even assuming that they are, "the federal rules permit plaintiffs to pursue alternative and mutually exclusive theories of relief."  *Watson v. Denver Career Serv. Bd.*, No. 07-cv-01755-REB, 2008 WL 140490, at *1 (D. Colo. Jan. 11, 2008).  Indeed, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

Other than arguing that Plaintiff's implied warranty claim precludes its CCPA claim, Defendants do not meaningfully challenge the sufficiency of Plaintiff's allegations, asserting only that "Plaintiff alleges nothing more than a private transaction as opposed to one which significantly impacts the public."  [Doc. 26 at 15].  Defendants are correct that an injury arising from a purely private transaction is not actionable under the CCPA.  *See Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013).

But here, 1881 Extraction alleges that Kiinja makes a number of representations on its website about the quality and performance of its technology that "were not truthful, and were made knowing they were not true."  [Doc. 8 at ¶¶ 32–34].  Courts have concluded that allegations of "misrepresentations [that are] directed to the market generally" and that "tak[e] the form of widespread advertisement and deception of actual and prospective purchasers" are sufficient to establish the third element of a CCPA claim.  *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998); *see, e.g.*, *Gates Corp. v. Dorman Prod., Inc.*, No. 09-cv-02058-CMA-KLM, 2010 WL 381853, at *3 (D. Colo. Jan. 22, 2010) (finding third CCPA element sufficiently pled where the complaint alleged that the defendant "uses the Internet to market its products" and made "misrepresentations in commerce"); *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1207 (D. Colo. 2015)

(allegations of misrepresentations "directed to the market generally" sufficient to establish public impact); *Edwards v. ZeniMax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2013 WL 5420933, at *6 (D. Colo. Sept. 27, 2013) (allegations of misrepresentations made in online advertising sufficient to establish public impact).  Plaintiff further alleges that Kiinja's salesperson advised 1881 Extraction of two other companies that purchased the Kiinja Extractor and both of those companies "received a machine that was not in operation or not working properly."  [Doc. 8 at ¶ 72].

While ultimately, Plaintiff may be unable to demonstrate that these (or other) companies saw the representations about the Kiinja Extractor made on Kiinja's website or establish the impact of any misrepresentation on the market generally, Defendants do not meaningfully explain why the allegations in the Amended Complaint are insufficient to state a claim at this juncture.  [Doc. 26 at 15].  And this Court respectfully declines to craft an argument on behalf of Defendants, who are and have been represented by able counsel.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).  Absent any substantive argument in the Motion to Dismiss demonstrating that no reasonable factfinder could find a violation of the CCPA, the Court concludes that dismissal of Count VII under Rule 12(b)(6) is not proper.  Accordingly, the Motion to Dismiss is **DENIED** with respect to Plaintiff's CCPA claim.

**IV.    Plaintiff's Request for Damages Against Kiinja**

Defendants next argue that the Court should "dismiss all damages against Kiinja . . . in excess of the purchase price."  [Doc. 26 at 17].  They again rely on a provision in the Agreement in support of their argument.  Specifically, they direct the Court to the following language:

> TO THE FULLEST EXTENT ALLOWED BY LAW, IN NO EVENT SHALL KIINJA BE LIABLE, WHETHER IN CONTRACT, TORT, STRICT LIABILITY, NEGLIGENCE, WARRANTY, OR UNDER ANY STATUTE OR ON ANY OTHER BASIS FOR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, MULTIPLE OR CONSEQUENTIAL DAMAGES SUSTAINED BY BUYER OR ANY OTHER PERSON OR ENTITY ARISING OUT OF OR CAUSED BY PRODUCT, KIINJA'S PERFORMANCE OR FAILURE TO PERFORM ITS OBLIGATIONS RELATING TO THE PURCHASE OF PRODUCT OR PERFORMANCE OF SERVICES, KIINJA'S BREACH OF THESE TERMS, THE POSSESSION OR USE OF ANY PRODUCT, OR THE PERFORMANCE BY KIINJA[] OF ANY SERVICES, WHETHER OR NOT FORESEEABLE AND WHETHER OR NOT KIINJA IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES ARISING FROM OR RELATED TO LOSS OF USE, LOSS OF DATA, DOWNTIME, PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, OR FOR LOSS OF REVENUE, PROFITS, GOODWILL, OR BUSINESS OR OTHER FINANCIAL LOSS.

[Doc. 8-1 at 7–8].  Defendants argue that the Court should "respect the limitation on damages" and dismiss all of Plaintiff's claims for damages against Kiinja in excess of the purchase price of the Kiinja Extractor.  [Doc. 26 at 17].  In response, 1881 Extraction asserts that "[f]or the reasons set forth in Sections I.A. and I.B. above"—i.e., Plaintiff's arguments concerning the breach of implied warranty claims and application of the economic loss rule—the Court should reject Defendants' argument.  [Doc. 32 at 14].  But Plaintiff does not actually explain why those arguments apply to whether the provision in the Agreement limiting Kiinja's damages bars Plaintiff's requests for monetary damages, and their connection is not plainly obvious to the Court.  The Court will not perform legal research on behalf of Plaintiff or construct arguments on Plaintiff's behalf that Plaintiff did not raise itself.  *Whitney*, 113 F.3d at 1173–74.  Accordingly,

the Court will **GRANT** the Motion insofar as it seeks to dismiss Plaintiff's request for damages that exceed the purchase price with respect to Count I, Plaintiff's breach of contract claim, and Count IV, Plaintiff's express warranty claim, given Plaintiff's lack of substantive argument explaining why this provision does not bar such requests. *See* [Doc. 8 at ¶¶ 81–82 (Plaintiff alleging that Kiinja breached the contract by failing to perform its obligations under the contract); *id.* at ¶¶ 100–03 (Plaintiff alleging that Kiinja breached its express warranty by failing to remedy defects in the Kiinja Extractor)].

Plaintiff does put forth some specific arguments with respect to its negligent and fraudulent misrepresentation claims, contending that "in addition to [its previously referenced] arguments, the limitation should not apply to the non-contractual claims" in the Amended Complaint. [Doc. 32 at 15]. Plaintiff asserts that its misrepresentation claims are independent tort claims and separate from the contract, [*id.*], which the Court construes as an argument that the Agreement's damages limitation does not apply to those claims. Defendants do not meaningfully respond to this argument in their Reply. *See* [Doc. 33 at 2–3].

The Court agrees with Plaintiff. Based on its plain language, the Agreement bars recovery for damages exceeding the purchase price for claims "arising out of or caused by Product, Kiinja's performance or failure to perform its obligations relating to the purchase of Product or performance of services, Kiinja's breach of [the Agreement], the possession or use of any Product, or the performance by Kiinja[] of any services, whether or not foreseeable and whether or not Kiinja is advised of the possibility of such damages." [Doc. 8-1 at 7–8 (capital letters omitted)]. Defendants do not explain how Plaintiff's requests for monetary damages exceeding the purchase price, insofar as the requests are tied to Plaintiff's negligent and fraudulent misrepresentation claims, fall within this provision. *See generally* [Doc. 26 at 16–17]. Furthermore, while Plaintiff does not expressly

raise any arguments with respect to its CCPA claim, Defendants too fail to adequately explain how Plaintiff's request for damages for its CCPA claim fits within the limiting provision. [*Id.*]. The Motion to Dismiss is thus **DENIED** with respect to Defendants' request to limit damages for those claims.

## VI.    Request to Strike Plaintiff's Demand for Treble Damages

Finally, Defendants argue that Plaintiff's demand for treble damages under Colo. Rev. Stat. § 6-1-113(2)(a)(III)—i.e., the CCPA—should be stricken under Rule 12(f). [Doc. 26 at 18]. In support, they direct the Court to Section 13-21-102 of the Colorado Revised Statutes, which states that

> [a] claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

Colo. Rev. Stat. § 13-21-102(1.5)(a). In response, Plaintiff argues that a claim for treble damages under the CCPA is separate and distinct from the punitive damages contemplated in § 13-21-102. [Doc. 32 at 17]. It notes that § 13-21-102(1.5)(a) applies to "action[s] governed by this section," i.e., "civil actions in which damages are assessed by a jury" and in which the jury may award reasonable exemplary damages. Colo. Rev. Stat. § 13-21-102(1)(a). Plaintiff argues that § 6-1-113 "does not permit the jury to award reasonable exemplary damages, instead mandating that such damages shall be '[t]hree times the amount of actual damages sustained.'" [Doc. 32 at 17 (quoting Colo. Rev. Stat. § 6-1-113(2)(a)(III))].

The Court agrees with Plaintiff. "Trebling under the CCPA occurs as a matter of law after the verdict only if the jury finds a CCPA violation." *Vista Resorts, Inc. v. Goodyear Tire & Rubber*

*Co.*, 117 P.3d 60, 74 (Colo. App. 2004). In contrast, "[t]he allowance or denial of [exemplary] damages rests in the discretion of the trier of fact." *Bill Manning, Inc. v. Denver W. Bank & Tr.*, 697 P.2d 403, 404 (Colo. App. 1984). Thus, treble damages available under the CCPA are separate and distinct from punitive damages available under § 13-21-102, which Plaintiff does not request in its Amended Complaint. *See* [Doc. 8 at 29–30].

This conclusion is consistent with how the Colorado Supreme Court has treated the two different types of damages. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 65 (Colo. 2005) ("A plaintiff is not entitled to recover both treble damages under the Colorado Consumer Protection Act and punitive damages under section 13-21-102," as a separate punitive damages award would be duplicative of a treble damages award under the CCPA.); *see also Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826 P.2d 819, 822–23 (Colo. 1992). Because the statutory directive that a request for exemplary damages cannot be included in an initial pleading applies only to civil actions governed by § 13-21-102, Plaintiff's demand for treble damages under the CCPA need not be stricken under that statute.

In their Reply, Defendants concede that "Plaintiff makes a good point," but nevertheless encourage the Court to "extend § 13-21-102(1.5)(a) to act as a gate keeper to ensure Plaintiff establishes a triable issue of bad faith prior to allowing Plaintiff to [demand] treble damages." [Doc. 33 at 10]. The Court declines to do so. "[F]ederal courts exercising diversity jurisdiction have traditionally applied existing state law and have refrained from creating *new* state law where the state's highest court has not done so." *Moore v. U.S./U.S. Dep't of Agric. Forest Serv.*, 864 F. Supp. 163, 165 (D. Colo. 1994). Absent any legal authority suggesting that § 13-21-102(1.5)(a)'s pleading requirements apply to a request for treble damages under the CCPA, the Court is not in

the position to expand Colorado statutory law.  For these reasons, the Motion to Dismiss is **DENIED** insofar as it seeks to strike 1881 Extraction's demand for treble damages.

## VII.   Plaintiff's Request to Amend

In its Response, 1881 Extraction asserts that if the Court finds the Amended Complaint deficient, "Plaintiff respectfully requests leave to amend to . . . address any such deficiencies under Rule 15(a)(2)."  [Doc. 32 at 18–19].  The Court declines to grant leave to amend absent a formal motion, as required by this District's Local Rules of Practice.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").  "A district court may deny leave to amend when 'a plaintiff fails to file a written motion and instead 'merely suggests [it] should be allowed to amend if the court concludes [its] pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (brackets omitted) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)).  This is because "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Id.*  Should Plaintiff seek to file an amended pleading, it must file a formal motion in accordance with the Local Rules.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Defendants' Motion for Relief Under Federal Rule of Civil Procedure 12 [Doc. 26] is **GRANTED in part** and **DENIED in part**;

(2)    Plaintiff's claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose—Counts II and III—are **DISMISSED with prejudice**;

(3)     Plaintiff's negligent misrepresentation and fraudulent misrepresentation claims—Counts IV and V—are **DISMISSED without prejudice** as to Defendants TigerShark and Harris;

(4)     Plaintiff's requests for damages exceeding the purchase price arising out of its breach of contract and breach of express warranty claims are **DISMISSED**; and

(5)     Within **seven days** of the date of this Order, counsel for the Parties shall <u>jointly</u> contact the chambers of Magistrate Judge Hegarty to set a Scheduling Conference in this matter.

DATED: March 9, 2023                         BY THE COURT:

_____
Nina Y. Wang
United States District Judge